**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MIKAIL E. MORSHED, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **WITH JURY TRIAL DEMAND** |
| EQUIFAX INFORMATION SERVICES, LLC | ) | |
| MIDLAND CREDIT MANAGEMENT, INC. | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PRELIMINARY STATEMENT**

1.     The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act 15 U.S.C. § 1681, *et seq.* (the "FCRA") to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

2.     Under the FCRA, consumer reporting agencies are charged with two primary duties: the duty to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports; and the duty to reasonably reinvestigate consumers' disputes of inaccurate information.

3.     Defendants compiled, maintained, and reported information concerning Plaintiff's creditworthiness, credit-standing, credit capacity, character, and general reputation. Then, that information was made available for use by third parties in credit transactions involving Plaintiff, for employment purposes, the underwriting of insurance for Plaintiff, and even in connection with a determination of Plaintiff's eligibility for a license or other governmental benefit. Accordingly,

1

and pursuant to various provisions of the FCRA, Plaintiff has a legally protected interest in Defendants fulfilling their respective duties under the FCRA, so that the information reported and maintained by Defendants is done so in a manner which is fair and equitable to Plaintiff, with regards to the confidentiality, accuracy, and relevancy of that information.

4.     This action for damages is based on Defendants' false reporting on Plaintiff's credit file and/or consumer reports, and failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

**PARTIES**

5.     Plaintiff, Mikail E. Morshed, is a natural person who resides in the State of New York and is a "consumer" as that term is defined at 15 U.S.C. § 1681a(c).

6.     Defendant, Equifax Information Services, LLC ("Equifax"), regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties for monetary compensation and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Equifax is a "consumer reporting agency" as that term is defined by FCRA at 15 U.S.C. § 1681a(f).

7.     Defendant, Midland Credit Management, Inc. ("MCM") is a debt collector headquartered in San Diego, California and is one of the largest debt collection companies in the United States. MCM furnishes debtor's information to consumer reporting agencies and is a "furnisher" governed by FCRA at 15 U.S.C. § 1681s-2.

8.     Defendant, Portfolio Recovery Associates, LLC ("PRA") is a debt collector headquartered in Norfolk, Virginia and is one of the largest debt collection companies in the United States. PRA furnishes debtor's information to consumer reporting agencies and is a "furnisher" governed by FCRA at 15 U.S.C. § 1681s-2.

2

**JURISDICTION AND VENUE**

9.      This Court has federal question jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, U.S.C. § 1692k and 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1391, venue is proper in this district because Plaintiff resides here and violations occurred here.

**ALLEGATIONS OF FACT**

10.      Mr. Morshed was in the market for credit and requested her credit file from Equifax. Upon receipt of his file, he discovered several inaccuracies, including accounts furnished by co-defendants MCM and PRA.

*Plaintiff's Section 1681e(b) Claim*

11.      Equifax reported that Mr. Morshed had several credit accounts (e.g. revolving accounts, mortgage accounts, installment loans, etc.) with two companies that he never applied for, much less obtained credit.

12.      The two companies are co-defendants MCM and PRA (collectively, "debt collectors" or "debt collector defendants")

13.      The debt collectors do not lend money to consumers, and they never issue credit accounts, such as installment accounts, revolving accounts (i.e. credit cards, lines of credit), mortgage accounts or any type of credit for that matter.

14.      By reporting that Mr. Morshed had credit accounts with the debt collectors, Equifax represents that he obtained a loan or credit from these companies.

15.      Equifax's report was inaccurate because Mr. Morshed did not have credit accounts with any of the debt collectors. Nor did he owe any money to them.

16.      The debt collectors do not lend money to debtors and never provide credit accounts, such as credit cards, to any consumers or debtors.

17. Due to an error in their reporting mechanism, the debt collector defendants *always* report debts in a manner that misrepresents the character and/or type of debt and result in debts appearing as credit accounts instead of collection accounts.

18. Equifax knows the debt collectors are furnishing inaccurate information when they represent that they are creditors collecting on credit accounts.

19. Despite being aware of the debt collector' systemic inaccurate reporting, Equifax has failed to adopt and/or implement procedures to prevent errors from appearing or remove the errors in consumer reports.

20. The debt collectors have not fixed the problem on their end because of the cost to change their reporting procedures.

21. Further, the debt collectors elect not to change their reporting procedures because they benefit from having the debts appear as credit accounts.

22. Specifically, a large percentage of the debts reported by MCM and PRA are either debts that they do not own, or they are debts that the debtors do not owe. If challenged by the debtor, the debts collectors may not be able to collect on the debts.

23. When compared to collection accounts, a debtor is much less likely to challenge and more prone to just pay a debt when it appears as a credit account in a report.

24. When a collection is listed as a credit account rather than a collection account, it causes confusion that often leads to debtors paying debts that they do not owe.

25. Both Equifax and the debt collectors believe they can get away with their illicit conduct because the general profile of the affected debtors are marginalized people without the resources to mount an effective challenge against them.

### *Plaintiff's Section 1681g Claim*

26.    The FCRA requires that Equifax clearly and accurately disclose all information in a consumer's file upon request from such consumer.

27.    Although the debt collectors are misclassifying the collection accounts as credit accounts when they report their accounts to Equifax, the debt collectors are reporting that they are debt buyers and identify an original creditor.

28.    Despite receiving information on a purported original creditor, Equifax did not disclose the information on the original creditor to the Plaintiff.

29.    According to the Consumer Data Industry Association ("CDIA"), the industry leading organization for furnishers and consumer reporting agencies, the "original creditor is required for collection agencies" and "must be present each time the account is reported."

30.    Further, the CDIA states the "purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports."

31.    Continuing, the CDIA notes that "[w]ithout the original creditor names, consumers may not know what the accounts represent."

32.    Thus, Equifax knows that it is required to report the original creditor's name and that its' failure to do so is causing the consumer to not recognize the account.

33.    Notably, the two other national consumer reporting agencies, Experian and Trans Union, have abided by the CDIA's edicts and implemented procedures that assure the original creditor name is included in all collection accounts that appear in their reports.

34.    In lawsuits against Trans Union, the consumer reporting agency has described a procedure to assure maximum accuracy that reviews all METRO II data for format errors like "data with mandatory fields that are blank" or "for anomalies in content (such as a creditor who normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection" prior to the data being loaded to the database.

35.     If Equifax had made the same investment in its procedures that were made by both Experian and Trans Union, then Equifax's credit reports would not be littered with collection accounts that do not contain the original creditor's name.

36.     Nonetheless, Equifax continues to knowingly omit the original creditor's name because Equifax does not want to incur the costs of implementing a procedure to correct the debt collector's misclassification of the account.

37.     While Equifax does not want to incur the cost of correcting the problem, Equifax continues to accept information from these unreliable debt collectors because the debt collectors are a significant source of income for Equifax.

38.     Equifax has conducted a cost-benefit analysis on whether to incur the costs to fix the error or to apportion a small percentage of those would-be costs to litigating claims brought by aggrieved consumers that fell victims to its conduct.

39.     In choosing to litigate rather than correct, Equifax was motivated to adopt and act on an interpretation of section 1681g that gave it grounds to litigate a defense against the claims that consumers were bound to bring against Equifax for its intentional violations of the FCRA.

40.      Because the language in section 1681g and the obligations of a credit reporting agency that arise from the said language are unambiguous, to give cover to an otherwise indefensible defense, Equifax had to purposely adopt a reading of § 1681g that contravened the clear objective and instruction of the statute.

41.      To achieve its purpose of adopting an interpretation of § 1681g that gave it cover and/or plausible denial, Equifax reads in an accuracy obligation in § 1681g where there is absolutely no language to support such reading.

6

42.    Specifically, while the statue clearly reads "All information in the consumer's file at the time of the request" must be "clearly and accurately disclose[d] to the consumer," § 1681g(a)(1)(A), Equifax claims that § 1681g only covers inaccurate information.

43.    The Supreme Court has instructed that entities governed by FCRA to steer away from interpretations of the FCRA that have no foundation based in the language of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

44.    There is no language in § 1681g to support Equifax's interpretation that § 1681g governs only information that is inaccurate.

45.    Further, the Supreme Court has instructed anyone governed by the FCRA to heed the warnings and/or holdings of the circuit courts of appeals when it comes to interpreting duties under the FCRA. And the Second Circuit stated, albeit in an unpublished opinion, that "§ 1681g requires consumer reporting agencies to 'clearly and accurately disclose ... [a]ll information,' not *all accurate information*." *Selvam v. Experian Information Solutions, Inc.*, 651 Fed. Appx. 29, 33 (2d Cir. 2016) (citing 15 U.S.C. § 1681g(a) (emphasis in original).

46.    The *Selvam* opinion was rendered in 2016, so Equifax has been on notice, from the Second Circuit, that its interpretation of section 1681g(a) was inaccurate for nearly 10 years.

47.    Additionally, during that same period, in 2015, Equifax was sued by 30+ state attorney generals for, among other things, failing to report the original creditor. More particularly, as a result of the state attorneys' litigation, Equifax agreed to "revise training materials and adopt policies and procedures to notify and instruct Collection Furnishers that the name of the Original Creditor … [is a] mandatory reporting requirement[], and [Equifax] shall reject data that is not provided with the name of the Original Creditor."[1]

---

[1]https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx

48. Moreover, Equifax has *direct* knowledge that its decision to omit the identity of original creditors when reporting a collection account is causing serious harm to consumers. In a recent lawsuit in the Middle District of Florida, Equifax admitted that its failure to report the name of the original creditor in collection accounts has led to "numerous other lawsuits filed against Equifax." *Clarke v. Equifax Information Services, LLC*, No. 8:25-cv-01499-JSM-AAS, ECF No. 20, fn. 1 (M.D. Fla. Oct. 1, 2025) (citing *Aguirre v. Equifax Information Services LLC*, 0:25-cv-61099-AHS (S.D. Fla. June 3, 2025); *Williams El v. Equifax Information Services LLC*, 8:25-cv-01930-JRR (D. Md. June 16, 2025); *Madaris v. Equifax Information Services LLC et al.*, Case No. 1:25-cv-00503-JPH-SKB (S.D. Ohio June 17, 2025).

49. And based on a review of Pacer for cases filed against Equifax, consumers have been suing Equifax for failing to report the original creditor for several years now.

50. Considering Equifax has not corrected this error after being sued by consumers for many years, the costs of litigating these lawsuits for Equifax have not been sufficient enough to deter it from continuing to violate the FCRA.

51. Therefore, a substantial punitive damages award is in tow to be levied against Equifax so that Equifax is actually deterred from violating the FCRA in the future.

### *Plaintiff's Section 1692e Claim*

52. The FDCPA prevents debt collectors from making false representations and/or communications in connection with the collect of a debt.

53. MCM and PRA reported to Equifax that Mr. Morshed was indebted to them for unpaid credit accounts.

54. Mr. Morshed never obtained credit or a loan from any of the debt collectors. Consequently, he was confused when he observed the credit accounts by them in her report.

8

55. Upon learning that the debt collectors were claiming he had credit accounts with them, Mr. Morshed wrote the debt collectors to inquire about their claims.

56. In his communication to the debt collectors, Mr. Morshed asked for information that showed he owed a debt to them.

57. Additionally, Mr. Morshed asked the debt collectors to cease their debt collection activity until they established that he owed a debt to them.

58. Each of debt collectors failed to provide Mr. Morshed with any information to establish that he owed them a debt.

59. None of the debt collectors were able to demonstrate they owned a debt of Mr. Morshed's because they did not purchase or obtain any debt from a creditor that he owed.

60. Nonetheless, they reported to Equifax that Mr. Morshed owed the debts.

61. And when reporting the debts to Equifax, the debt collectors reported the debts as if they were credit accounts instead of collection accounts—because a consumer is less likely to challenge an unknown credit account than an unknown collection account.

### *Plaintiff's Sections 1681i(a) and 1681s-2(b) Claims*

62. Mr. Morshed disputed the collection accounts with Equifax.

63. From the dispute letters Equifax knew it was reporting inaccurate and incomplete information regarding the collection accounts.

64. But Equifax did not investigate Mr. Morshed's dispute.

65. Instead of investigating his dispute, Equifax passed the dispute along to the MCM and PRA, sat back and waited to accept their dispute results as its' own.

66. For their part, MCM and PRA did not do a reasonable investigation.

9

67. Instead of conducting a careful inquiry into the matters raised in Mr. Morshed's dispute, MCM and PRA performed a cursory investigation that merely confirmed their prior reporting was being reported verbatim by Equifax.

## COUNT I
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681e(b)

68. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports.

69. As a result of Equifax's violations of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

70. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

71. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant Equifax in amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT II
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681g

72. Pursuant to 15 U.S.C. § 1681g(a)(1), consumer reporting agencies are mandated to provide a consumer with all information in the consumer's file upon request from the consumer.

73. Defendant Equifax violated 15 U.S.C. § 1681g(a)(1), by failing to provide the Plaintiff with all information in his file after he requested it.

74.    Equifax violated § 1681g(a)(1) by failing to provide Plaintiff with the original creditor name for the MCM and PRA collection accounts.

75.    As a result of Equifax's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: deprived of important information, hampered ability to correct errors in his report, cost and time to search for the withheld information, frustration and anxiety, feelings of fear, feelings of worry, embarrassment and humiliation, and other emotional and mental distress.

76.    The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

77.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT III
## <u>VIOLATIONS OF THE FCRA 15 U.S.C. § 1692e</u>

78.    Defendants LVNV and PRA violated 15 U.S.C. § 1692e falsely representing Plaintiff owed a debt that he did not owe.

79.    Defendants MCM and PRA violated 15 U.S.C. § 1692e by falsely characterizing their collection accounts as credit accounts.

80.    Defendants MCM and PRA violated 15 U.S.C. § 1692e by reporting Plaintiff had credit accounts when they knew he did not have credit accounts with them.

81.    Defendants MCM and PRA violated 15 U.S.C. § 1692e by reporting that Plaintiff owed them for debts that they knew they did not own.

82. As a result Defendants' violations of 15 U.S.C. § 1692e, Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

83. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1692k(a)(1), 1692k(a)(2)(A), and 1692k(a)(3).

## COUNT IV
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681i

84. Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation and delete information that could not be verified as accurate and complete.

85. Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit files

86. Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information included in Plaintiff's disputes.

87. Equifax violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete or modify the disputed information that was found to be inaccurate, incomplete or unverifiable.

88. As a result of Equifax's violations of 15 U.S.C. §1681i, Plaintiff suffered actual damages, including but not limited to: harm to his2 credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness, shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

89.    The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

90.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant Equifax in amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT V
## <u>VIOLATIONS OF THE FCRA 15 U.S.C. § 1681s-2(b)(1)</u>

91.    Defendants MCM and PRA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation of Plaintiff's dispute(s) after his disputes were furnished directly to it by co-defendant Equifax.

92.    Defendants MCM and PRA violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information that Equifax forwarded to them.

93.    Defendants MCM and PRA violated 15 U.S.C. § 1681s-2(b)(1)(C)-(D) by failing to report back to Equifax what information was discovered or could have been uncovered upon a reasonable investigation of Plaintiff's dispute(s).

94.    Defendants MCM and PRA violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to promptly delete or modify the disputed information—that was found to be inaccurate, incomplete or unverifiable—upon a lawful investigation and prevent that disputed information from re-reporting to Plaintiff's credit files with Equifax.

95.    As a result of Defendants' violations of 15 U.S.C. §1681s-2(b)(1), Plaintiff suffered actual damages, including but not limited to: harm to his credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, chest pain and tightness,

shortness of breath, irritability, sleep loss, feelings of fear, feelings of shame, difficulty concentrating, embarrassment and humiliation and harm to reputation.

96.    The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

97.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

98.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against all Defendants; for his fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

Dated:    March 12, 2026                                              Respectfully submitted:

**Randall Steketee, Esq.**
Attorney for Plaintiff
**The Steketee Law Firm, LLC**
254 W. 31st Street, 6th Floor
New York, NY 10001
Phone:  917-882-8876
Fax:      917-398-7070
randall@steklawfirm.com